Mr. Justice Walkee dissenting: The only ground for equitable relief, as between Bozeman and the Bank, rests upon the contract made by the Bank with Rear-don, the co-security of Bozeman, in regard to the note executed to the Bank by Simeon Buckner, as principal, and Reardon and Bozeman as his securities. The Bank sued Buckner and Boze-man on this note, in the common law court, and Bozeman pleaded the agreement between the Bank and Reardon as a release in bar of a recovery against him. Upon demurrer, this plea was held bad, and the decision of the circuit court was, upon a writ of error to this court, affirmed. We held that agreement to be a mere covenant between Reardon and the Bank, in which Boze-man had nothing whatever to do. See 2 Eng. 328. It has been definitely settled there, that Bozeman was neither released nor discharged from his liability to the Bank by this contract; and whether this decision is right or wrong, it is the law of the case, and we are bound by the judicial interpretation there given. But even if we were not, and could re-investigate this question, Bozeman’s claim to equitable relief is swept off by holding the agreement a valid release, for then his defence was complete at law, and when made, he must abide his election. His whole ground for equitable relief is therefore predicated upon the fact that the agreement was not a release to him at law, and if not at law, surely not in a court of equity, where the chancellor would disregard all legal technicalities, and look to the real injury or wrong done. Bozeman, then, was not released or discharged from his liability to the Bank by reason of this agreement, and it is shown clearly that no part of the note, for the payment of which he was security, was in fact paid. The contract then, between the Bank and Reardon, could only affect his rights by impairing his remedy over against Buckner, the principal, or Reardon, his co-security. Was such the effect of this contract? The Bank held two notes to which Reardon was security, and agreed with him that if he would pay $4,000 Arkansas paper, “in respect to his securityship, to be applied to either or both of °the notes, as the bank might think fit and proper,” that it would not sue him on the note, and that if sued or moved against by his co-security, the Bank would save him harmless. Under this agreement, the Bank had a right, at her discretion, to apply the money so paid to either of the notes, and did in fact apply the whole of it to that debt to which Bozeman was not security. Bozeman had no right to complain of this. Reardon could have applied the payment to either debt; he expressly conferred upon the Bank power to do so, and if the payment had been made to the Bank without any instructions and in the absence of any contract, the law, under the circumstances of the case, would have permitted the Bank to do precisely what it did do — apply the money to either debt at its discretion. There is nothing unfair in this. The Bank, no doubt, credited the note which she thought the most doubtful, as any prudent business man would have done, and had a right to do, under or in the absence of such agreement as made in this case. It is true that if Bozeman, as security for Buckner, should pay this whole debt to the Bank, he could recover one-half the sum so paid from his co-security, Reardon. But his right to recover even this, depends upon his actual payment of the whole debt, for until this is done, he has no right of action against Reardon, and until such right exists, it cannot be said to be impaired. But to place this case in a still stronger light, suppose that Bozeman had paid the whole debt to the Bank, and was now seeking a recovery over against his co-security for one-half of the money so paid, I cannot conceive how his rights are affected by the covenant entered into between the Bank and Reardon. The covenant was not that Bozeman should not sue, or that Reardon should not pay; but it was to indemnify and save Reardon harmless, if sued or moved against. Suppose, however, that the Bank had even covenanted with Reardon that Bozeman should not sue him, such covenant would have been a mere nullity, so far as Bozeman was concerned. The truth is that Bozeman is left as free to sue and recover against his co-security as if no such contract had been made. It is true that Reardon may have his action on the covenant against the Bank for any damages he may actually sustain ; as, for instance, if Bozeman, after paying the debt, should sue Reardon, and recover half the sum so paid, Rear-don could recover such sum with costs from the Bank. But, suppose when sued, Reardon should prove insolvent, having in fact sustained no.damages, he could recover nothing from the Bank. So that, in every point of view in which this subject presents itself to my mind, the transaction between the Bank and Reardon has, in no respect, changed the liabilities or affected the right of Bozeman, and consequently that he is not entitled to relief against the Bank. Dissenting from the opinion of the court upon this point- in view of the whole case, I am of opinion that the decree of the court below éhotíld be reversed with costs.